NO. 4-10-0404    Opinion Filed 4/11/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BRAD LIEBERMAN, JOHN LOY, and HAROLD ) Appeal from
PENTER, Individually and on Behalf of ) Circuit Court of
Others Similarly Situated, ) Schuyler County
     Plaintiffs-Appellants, ) No. 09MR10
     v. )
LIBERTY HEALTHCARE CORPORATION, a )
Pennsylvania Corporation; MARK BABULA, )
Psy.D.; DAVID BRILLHART, Ph.D; PAULA )
LODGE, Ph.D.; CHAD OBERHAUSEN, Psy.D.; )
ABDI TINWALLA, M.D.; SHAN JUMPER, )
Ph.D.; MICHAEL P. BEDNARZ, M.D.; DAVID )
SUIRE, Psy.D.; ROBERT BRUCKER, JR., )
Psy.D.; JACQUELINE BUCK, Ph.D.; and ) Honorable
Does 1 Through 20 Inclusive, ) Scott J. Butler,
     Defendants-Appellees. ) Judge Presiding.
_____

     JUSTICE POPE delivered the judgment of the court, with
opinion.
     Justices Turner and Appleton concurred in the judgment
and opinion.

**OPINION**

     In July 2009, plaintiffs, Brad Lieberman, John Loy, and

Harold Penter filed a class-action complaint against defendants,

Liberty Healthcare Corporation, Mark Babula, David Brillhart,

Paula Lodge, Chad Oberhausen, Abdi Tinwalla, Shan Jumper (Liberty

defendants), Michael P. Bednarz, M.D., David Suire, Robert

Brucker, Jr., Jacqueline Buck, and Does 1 through 20 (State

defendants), requesting monetary damages.  Plaintiffs had

previously been adjudicated sexually violent persons (SVP)

pursuant to the Sexually Violent Persons Commitment Act (Act)

(725 ILCS 207/1 through 99 (West 2008)) and committed to the

Department of Human Services (DHS).  Plaintiffs' complaint

alleged defendants committed professional malpractice by diagnosing plaintiffs with paraphilia not otherwise specified, sexually attracted to nonconsenting persons (paraphilia NOS, nonconsent).

In April 2010, the trial court dismissed plaintiffs' complaint with prejudice under section 2-619(a)(4) of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619(a)(4) (West 2008)) on the ground it was collaterally estopped by each of their prior civil-commitment trial findings.

Plaintiffs appeal, arguing the trial court erred in dismissing their complaint on the basis of collateral estoppel where (1) the alleged malpractice did not occur until after plaintiffs' initial commitment trials ended, (2) the posttrial diagnoses and validations are separate and distinct conduct from the acts of those who diagnosed plaintiffs with the same disorder before their trials, and (3) those prior trials did not litigate the propriety of diagnoses and validations that had not yet occurred. We affirm as modified and remand with directions.

I. BACKGROUND

A. The Plaintiffs

An examination of the histories of each plaintiffs' individual case is helpful in examining the ultimate issue in plaintiffs' instant appeal.

1. *Brad Lieberman*

In 1980, a jury found Brad Lieberman guilty of six counts of rape. Later that year, Lieberman was found guilty of

rape and attempted rape. The trial court sentenced Lieberman to a number of concurrent prison terms, the longest of which required him to serve 40 years' imprisonment. See *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 586, 884 N.E.2d 160, 164 (2007).

In February 2006, Lieberman was adjudicated a sexually violent person and committed to the Illinois Department of Human Services (DHS). *Lieberman*, 379 Ill. App. 3d at 586, 884 N.E.2d at 164. The commitment petition alleged Lieberman suffered from mental disorders, which made it probable that he would commit future acts of sexual violence. *Lieberman*, 379 Ill. App. 3d at 586, 884 N.E.2d at 164. At hearing, a doctor testified diagnosing defendant with paraphilia NOS, nonconsent. *Lieberman*, 379 Ill. App. 3d at 588, 884 N.E.2d at 166. Lieberman appealed, arguing, *inter alia*, the State's experts' opinions and diagnoses did not meet the diagnostic criteria of the Diagnostic and Statistical Manual of Mental Disorders (DSM) and they relied solely on his past crimes to diagnose him. *Lieberman*, 379 Ill. App. 3d at 602, 884 N.E.2d at 177. The appellate court affirmed. Both the Illinois and United States Supreme Courts denied his petition for leave to appeal. *In re Detention of Lieberman*, 229 Ill. 2d 623, 897 N.E.2d 252 (2008); *Lieberman v. Illinois*, ___ U.S. ___, 129 S. Ct. 2050 (2009).

In July 2008, Lieberman filed a petition for discharge in conjunction with his annual disposition hearing. See *In re Detention of Lieberman*, 401 Ill. App. 3d 903, 905, 929 N.E.2d

- 3 -

616, 618 (2010). The trial court dismissed the petition, finding no probable cause existed to show Lieberman was no longer a sexually violent person. *Lieberman*, 401 Ill. App. 3d at 920, 929 N.E.2d at 629. Lieberman appealed, arguing again that paraphilia NOS, nonconsent, is not a valid disorder because it is not found within the DSM. *Lieberman*, 401 Ill. App. 3d at 922, 929 N.E.2d at 630-31. In May 2010, the appellate court affirmed the dismissal of the petition for discharge. In September 2010, the supreme court vacated the appellate court's judgment and remanded the case to the appellate court for reconsideration in light of its decision in *In re Detention of Hardin*, 238 Ill. 2d 33, 932 N.E.2d 1016 (2010) (clarifying the evidentiary standard for probable cause). See *In re Detention of Lieberman*, 237 Ill. 2d 557 (2010). It appears the cause is currently pending in the First District Appellate Court.

### 2. *John Loy*

In 1982, John Loy was convicted of rape and sentenced to 30 years' imprisonment. In August 2005, the Knox County circuit court adjudicated Loy a sexually violent person and committed him to DHS. In re Detention of Loy, No. 01-MR-03 (Cir. Ct. Knox Co.). The State's petition alleged Loy suffered from paraphilia NOS, nonconsent. The State's supplemental appendix shows that in February 2009, Loy filed a petition for discharge, arguing the nonexistence of paraphilia NOS, nonconsent, as a valid diagnosis. The trial court dismissed Loy's petition. From the information contained in the State's supplemental appendix it

- 4 -

does not appear Loy has appealed the trial court's dismissal of his petition for discharge.

In December 2009, Loy filed a motion for a new trial, which the trial court denied in April 2010. In May 2010, Loy filed a notice of appeal from the trial court's April 30, 2010, denial of his motion for a new trial and the initial August 2005 SVP finding. It appears Loy's appeal from the court's denial of his motion for a new trial is currently pending in the Third District Appellate Court, No. 3-10-0366.

### 3. *Harold Penter*

In June 1999, Harold Penter pleaded guilty to aggravated criminal sexual abuse and the trial court sentenced him to 10 years' imprisonment. In April 2006, the State filed a petition to involuntarily commit Penter under the Act. In July 2009, Penter was adjudicated a sexually violent person and committed to DHS. Both parties state an appeal involving Penter is currently pending in the Fifth District Appellate Court, No. 5-10-0233. However, the faxed copy of the docket sheet contained in the record is incomplete as it appears to be missing a page. That missing page appears to be included in the State's supplemental appendix but is illegible.

### B. Plaintiffs' Complaint

In July 2009, plaintiffs filed an eight-count complaint, alleging defendants committed medical malpractice by negligently diagnosing and/or validating a disorder (paraphilia NOS, nonconsent) that does not exist in the DSM and improperly

based their diagnoses solely on past criminal behavior.  Each count alleges the following with respect to proximate cause and damages:

> "As a direct and proximate result of one or more of the foregoing careless and negligent acts or omissions of [defendants], Plaintiffs suffered severe and permanent damage in that they have been involuntarily and unjustly detained, sometimes for years, at the [detention facility]; deprived of the comforts, companionship, and affection attendant to living as free men with their families; and lost various gains and earnings they would otherwise have acquired but for their detention on the bases of a misdiagnosed and/or improperly validated paraphilia non-consent disorder."

Plaintiffs have maintained the action does not challenge whether plaintiffs should be detained, nor does it seek their release from detention.  Instead, they emphasize this is a civil action that seeks to financially compensate plaintiffs for harm caused them by the defendants' professional malpractice.  If plaintiffs prevail, their sole relief would be the monetary value of the time they have spent, and may continue spending, in detention on the basis of an allegedly nonexistent and improperly diagnosed mental disorder.  Plaintiffs' complaint also requested damages

"including but not limited to lost income and other earnings, loss of consortium, loss of society, and pain and suffering."

### C. Defendants' Motion To Dismiss

In September and October 2009, the State and Liberty defendants moved to dismiss plaintiffs' complaint under sections 2-615 and 2-619 of the Civil Code. Defendants argued, *inter alia*, (1) collateral estoppel barred plaintiffs from relitigating whether they have been unjustly detained or suffered damages, (2) there was no physician-patient relationship with plaintiffs because they never consented to being evaluated, diagnosed, or treated, (3) their negligence could not be the proximate cause of plaintiffs' injury because of the valid judgment of commitment, and (4) the complaint did not comply with the section 2-622(a) affidavit and report requirements. Defendants also argued (1) they were immune from suit under statutory and common law and sovereign immunity and (2) the "*Heck* rule" supported their collateral-estoppel argument and should be adopted as Illinois law. See *Heck v. Humphrey*, 512 U.S. 477 (1994) (finding 42 U.S.C. §1983 plaintiffs may not recover damages for unlawful detention prior to a favorable termination of the judgment authorizing the detention).

### D. Plaintiffs' Response to Defendant's Motion To Dismiss

Plaintiffs argued collateral estoppel did not apply to this case because (1) the issue of whether any physician involved with the plaintiffs' civil commitment negligently committed professional malpractice was neither litigated nor decided at the

plaintiffs' commitment trials, and (2) the issue of whether the DSM ever recognized paraphilia NOS, nonconsent, as a legitimate diagnosis was neither litigated nor decided during their commitments trials. Plaintiffs conceded all three plaintiffs assumed during their commitment trials the disorder existed in the DSM, as the State evaluators said it did. Plaintiffs argued that while they have litigated in fact whether the disorder satisfied the diagnostic criteria of the DSM, the question of its existence in the DSM is different.

### E. Trial Court's Ruling

Following an April 30, 2010, hearing, the trial court granted defendants' motions to dismiss plaintiffs' complaint with prejudice. The court found the issue of whether plaintiffs have a mental disorder and are substantially probable to engage in acts of sexual violence was already litigated in each plaintiff's commitment trial. Specifically, the trial court found the following:

> "Plaintiffs are seeking damages solely
> due to their detention for lost income and
> other earnings, loss of consortium, loss of
> society, and pain and suffering.
>
> Under Section 2-619 of the [Civil Code,]
> the defendants are seeking dismissal with
> prejudice of the complaint based on the
> doctrine of collateral estoppel. The
> Illinois Supreme Court recently explained

- 8 -

collateral estoppel in *People v. Hopkins*, [235 Ill. 2d 453, 922 N.E.2d 1042 (2009),] as a doctrine that's applicable when a party participates in two different consecutive causes of action and some controlling question has been adjudicated against that party by a court of competent jurisdiction.

The Court finds that the plaintiffs have participated in a prior case which arises on a different cause of action, and in that I'm referring to, specifically, to the SVP case. And the Court finds that there is a controlling question material to the outcome of that prior case that has already been adjudicated against the plaintiffs. And I'm referring to the question of whether or not the plaintiffs have been properly diagnosed as suffering from a mental disorder that makes it substantially probable that the plaintiffs will engage in acts of sexual violence.

The fact that certain evidence or certain arguments, even though important evidence or important arguments, could have been made during the SVP case does not affect the collateral estoppel analysis that the

Court's going through in this proceeding.

Therefore, the Court's going to grant the defendant's [*sic*] Motion to Dismiss with prejudice on the basis of collateral estoppel."

This appeal followed.

## II. ANALYSIS

On appeal, plaintiffs argue the trial court erred in ruling plaintiffs' claim was collaterally estopped by plaintiffs' prior civil commitment judgments. Specifically, plaintiffs contend collateral estoppel is not proper because (1) the malpractice alleged--*i.e.*, the negligent diagnoses and/or validation of paraphilia NOS, nonconsent--did not occur until after plaintiffs' initial commitment trials ended, (2) the posttrial diagnoses and validations are separate and distinct conduct from the acts of those who diagnosed the plaintiffs with that same disorder before their trials, and (3) those prior trials did not litigate the propriety of diagnoses and validations that had not yet occurred.

Defendants argue (1) the trial court properly applied collateral estoppel to dismiss plaintiffs' complaint, (2) plaintiffs' malpractice claim relitigates issues of law and fact already decided in their respective SVP cases, (3) plaintiffs' continued commitments are interconnected with the judgments authorizing commitment, and (4) plaintiffs are litigating identical issues in parallel proceedings.

In the alterative, defendants request we adopt the rule announced in *Heck*, 512 U.S. 486-87, and remand the case to the trial court with directions to dismiss the complaint *without* prejudice. Defendants maintain under the *Heck* rule, each plaintiff's cause of action could move forward if his commitment is invalidated.

## A. Standard of Review

The standard of review of a section 2-615 or 2-619 dismissal order is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583-84, 736 N.E.2d 1174, 1178 (2000). The applicability of the collateral-estoppel doctrine is a purely legal question, which is also subject to *de novo* review. *People v. Sutherland*, 223 Ill. 2d 187, 197, 860 N.E.2d 178, 192 (2006).

## B. Collateral Estoppel

Collateral estoppel, commonly known as issue preclusion, precludes a party from relitigating an issue already decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294, 657 N.E.2d 926, 929 (1995). The doctrine applies where

> "(1) the issue decided in the prior
> adjudication is identical with the one
> presented in the suit in question, (2) there
> was a final judgment on the merits in the
> prior adjudication, and (3) the party against
> whom estoppel is asserted was a party *** to
> the prior adjudication." *Gumma v. White*, 216

Ill. 2d 23, 38, 833 N.E.2d 834, 843 (2005).

Here, the issue in the instant case, whether paraphilia NOS, nonconsent, is a qualifying condition for commitment, was also at issue in each commitment case. We are unpersuaded by plaintiffs' attempt to argue the issues in the trial court are too attenuated to be precluded from consideration in the instant case. Plaintiffs contend that while they have litigated whether the disorder satisfied the diagnostic criteria of the DSM, the question of its existence in the DSM is different. However, plaintiffs could have, and likely should have, raised that specific issue before the trial court. They did not. We note plaintiffs are free to file a petition for discharge or a writ of *habeas corpus* based on the argument they are being illegally held on an invalid nonexistent diagnosis.

Further, plaintiffs are clearly the same parties as in the prior commitment cases and the trial courts in each case made a final judgment on the merits. For purposes of applying the doctrine of collateral estoppel, however, a judgment is not final until the potential for appellate review has been exhausted. *Hopkins*, 235 Ill. 2d. at 469, 922 N.E.2d at 1050-51 (citing *In re A.W.*, 231 Ill. 2d 92, 100, 896 N.E.2d 316, 321 (2008)). The trial court predicated its ruling on plaintiffs' initial commitment adjudications. As a result, a determination of whether plaintiffs' initial commitment rulings were appealed, and if so, whether the appellate process has been exhausted, is essential to the proper resolution of the collateral-estoppel

- 12 -

issue.

We note that while the trial court found collateral estoppel applied, it did so based upon the arguments and information presented to it. However, the record does not show plaintiffs raised the issue of the nonfinality of their judgments in the trial court to argue against collateral estoppel. With the exception of Lieberman, whose appellate review of the initial commitment case has been exhausted by virtue of the supreme court's denial of his petition for leave to appeal, the record is unclear as to the other two plaintiffs.

For example, while it appears Loy filed a 2009 motion for a new trial, it is unclear whether he took a timely direct appeal from the 2005 ruling. Further, in July 2009, Penter was adjudicated an SVP and committed to DHS. In May 2010, the trial court denied his motion for a new trial. While both parties state an appeal involving Penter is currently pending in the Fifth District Appellate Court, the record is inadequate to make this determination. The faxed copy of Penter's docket sheet contained in the record is incomplete, and the missing page contained in the State's supplemental appendix is illegible.

This lack of clarity regarding the finality of plaintiffs' judgments notwithstanding, a trial court's order dismissing a case may be affirmed on any reason in the record, regardless of whether the court relied upon such ground. See *Wright v. City of Danville*, 174 Ill. 2d 391, 399, 675 N.E.2d 110, 115 (1996).

C. The *Heck* Rule

In their motion to dismiss below, and again before this court in response to plaintiffs' arguments on appeal, defendants request we adopt the *Heck* rule and remand the case to the trial court with directions to dismiss the complaint without prejudice. Defendants maintain under the *Heck* rule, plaintiffs' cause of action could move forward once they were no longer committed.

In *Heck*, the United States Supreme Court established that a section 1983 (42 U.S.C. §1983 (1994)) claim calling into question the lawfulness of a plaintiff's conviction or confinement is not cognizable until the conviction or confinement has been invalidated. *Heck*, 512 U.S. at 483. In *Heck*, the plaintiff was convicted in state court of voluntary manslaughter, which he appealed. *Heck*, 512 U.S. at 478-79. Thereafter, the plaintiff filed a *pro se* section 1983 claim in United States District Court against the prosecutors and a police investigator alleging an unlawful investigation led to his arrest and the defendants knowingly destroyed exculpatory evidence. *Heck*, 512 U.S. at 479. The plaintiff sought, *inter alia*, compensatory and punitive damages but did not seek injunctive relief or release from custody. *Heck,* 519 U.S. at 479. The district court dismissed the complaint with prejudice because it raised issues directly implicating the legality of the plaintiff's confinement. *Heck*, 512 U.S. at 479. The plaintiff appealed. While his appeal was pending, the state supreme court affirmed his conviction and

sentence on direct appeal. *Heck,* 519 U.S. at 479. The Seventh Circuit affirmed the district court's dismissal of the plaintiff's 1983 claim, finding the action challenged the legality of his conviction. *Heck,* 519 U.S. at 479-80. The United States Supreme Court affirmed and held the following:

> "[I]n order to recover damages for *** harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, [citation]." *Heck*, 512 U.S. at 486-87.

A section 1983 "claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable." (Emphasis omitted.) *Heck*, 512 U.S. at 487. A court must dismiss a section 1983 claim if a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence." *Heck,* 512 U.S. at 487. The *Heck* rule avoids parallel litigation--specifically, a collateral attack on an otherwise unchallenged judgment--and precludes the possibility of a successful tort action that would contravene strong judicial policy against the creation of two

- 15 -

conflicting resolutions. *Heck*, 512 U.S. at 487. Plaintiffs argue *Heck* does not apply to suits brought by civil detainees. We disagree. "*Heck* applies to SVPA detainees with access to habeas relief." *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140 (9th Cir. 2005); see also *Hubbs v. Alamao*, 360 F. Supp. 2d 1073, 1080 (C.D. Cal. 2005) (finding *Heck* barred the plaintiff's claim the evaluating psychologist committed medical malpractice when she relied on false information to recommend SVP commitment where the allegations implied the invalidity of his lawful commitment). Here, each plaintiff is confined by virtue of his SVP adjudication. In addition, each has the ability to file a writ of *habeas corpus*.

Further, an action under section 1983 is similar to the common-law tort of malicious prosecution, which requires the plaintiff to prove the "termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. While not yet formally adopted in Illinois to apply to civil cases, *Heck* is not incompatible with such application. For example, the Indiana Court of Appeals, applying *Heck*, found a defendant was not entitled to damages for false imprisonment where his conviction had not been overturned. See *Scruggs v. Allen County/City of Fort Wayne*, 829 N.E.2d 1049, 1051 (Ind. Ct. App. 2005). Further, in *Yount v. Sacramento*, 183 P.3d 471 (Cal. 2008), the California Supreme Court stated, although *Heck* is a rule of federal law applying to federal causes of actions challenging the validity of state convictions, it could not think

of a reason to distinguish between a section 1983 and a tort claim. *Yount*, 183 P.3d at 484 (pointing out the similarities between a section 1983 claim and a tort action). We find nothing preventing the application of the *Heck* rule to the facts of this case.

While this appears to be a case of first impression in Illinois, we find additional guidance from the treatment of legal-malpractice cases within the state. In Illinois, legal-malpractice claims are already treated in a manner consistent with *Heck*. See *Paulsen v. Cochran*, 356 Ill. App. 3d 354, 358-59, 826 N.E.2d 526, 530 (2005) (First District finding a defendant must show his conviction had been favorably terminated before he can maintain a malpractice claim against his former attorney); see also *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 821, 695 N.E.2d 1288, 1290 (1998) (First District finding a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice (citing *Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997))). Similarly, the Fifth District Appellate Court, comprised of panel members from this court, has previously held a legal-malpractice cause of action does not accrue until the plaintiff's conviction is overturned. See *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 406, 752 N.E.2d 1232, 1240 (2001) (and the cases cited therein).

In this case, plaintiffs are attempting to collaterally attack their lawful confinement by alleging medical malpractice in their SVP diagnoses without challenging their underlying

- 17 -

confinement.  Clearly, a successful claim would be inconsistent with their lawful commitments.  The adoption of the *Heck* scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs.  Such a result is also consistent with a long-standing judicial policy of avoiding conflicting judgments.  While plaintiffs maintain any award would not necessarily imply the invalidity of their continued confinement, "[i]t is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the convictions having been valid, *Heck* kicks in and bars his civil suit."  *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

Here, no matter how you color it, plaintiffs appear to be asking for a declaration that their commitments were wrongly decided.  Plaintiffs' success in this action would implicitly question the validity of their commitment proceedings.  Moreover, we can reasonably foresee a scenario not long down the road wherein any monetary award would in turn be used by plaintiffs to buttress a claim they were wrongfully committed in the first place.  However, plaintiffs cannot use their malpractice complaint as a vehicle for mounting a collateral, or indirect, attack on commitment determinations that have not been reversed. See *Heck*, 512 U.S. at 486.  Instead, the better way to proceed is to directly appeal from the denial of a petition for discharge or to file a writ of *habeas corpus*.  Only after the favorable termination of plaintiffs' confinements may they pursue their

claim for money damages.  Accordingly, while we affirm the judgment of the trial court, the dismissal should be *without* prejudice.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as modified and remand with directions to enter a dismissal without prejudice.

Affirmed as modified; cause remanded with directions.