HAMILTON, Circuit Judge,
concurring in part and dissenting in part.
I agree that the evidence was sufficient to support the convictions of both Williams and Austin and that the district judge did not err in sentencing. I concur in those portions of the court’s opinion and in the judgment affirming Austin’s conviction and sentence.
I respectfully dissent from the affirmance of Williams’s conviction. For our adversarial system of criminal justice to function, a defendant must have one person who is zealously acting in his interests — his defense lawyer. Criminal defense lawyers have many duties. Those duties include trying to save their clients from their own folly, especially as they face an intimidating and even frightening criminal justice system. If the lawyer’s first response to an idea like Williams’s false alibi can be to disclose that information to the court and prosecutor, we will erode the confidence that accused clients should have in their lawyers. In the long run, we will undermine the ability of those lawyers to represent their clients effectively-
Williams was denied the effective assistance of counsel when his original lawyer breached his professional duties of loyalty and confidentiality and then became a witness against him without objection from his new trial counsel. Although the question of prejudice is a close one, I would remand for a new trial. The prosecution itself has described the original lawyer’s testimony as “essential” to its case against Williams, and the testimony let the prosecutor force Williams to admit fifteen times that the contents of the letter he gave to the lawyer were lies. I address first the performance prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), explaining the original lawyer’s breach of his duties of loyalty and *386 confidentiality and turning then to trial counsel’s failure to object to the original lawyer’s testimony. I conclude with the prejudice prong of Strickland and the results of the failure to provide effective assistance of counsel.
I. The Performance Prong — Loyalty and Confidentiality
Defendants facing criminal charges often come up with stupid, even criminal, ideas to try to beat the charges. Their lawyers often learn of these stupid ideas. Williams fit right into that pattern when he gave his first lawyer, Dennis Ryan, a sealed letter for his cousin asking for support, for a false alibi. Ryan was properly suspicious. He opened the letter and realized that Williams was trying to use him as a messenger to help concoct a false alibi.
Any lawyer who has had a dishonest or unethical client, and just about any experienced criminal defense lawyer, can appreciate the problem here. Ryan was upset and offended, and he decided to withdraw from the case. Ryan had that right, but the problem is how he did so. Without talking with his client, his first action was to file in court a motion to withdraw supported by his own affidavit fully explaining the circumstances. Making matters much worse for his client, he failed to obtain court permission to file his motion under seal, and thus gave the prosecutor full access to the motion and the affidavit, and eventually to the letter. In my view, the result was a breach of his professional duties of loyalty and confidentiality to his client, and a failure to act as the counsel that the Sixth Amendment promises.
A. Strickland and Professional Standards
Before explaining just how the lawyer breached- his duties of loyalty and confidentiality, let’s look at the connection between professional standards and the Sixth Amendment right to counsel. To show a violation of his right to counsel, the performance prong of Strickland v. Washington requires Williams to show that his lawyers performed seriously below professional standards and that their failures prejudiced him. 466 U.S. at 687, 104 S.Ct. 2052. The constitutional standard is “reasonableness under prevailing professional norms.” Id. at 688,104 S.Ct. 2052.
Strickland and the Sixth Amendment right to counsel do not constitutionalize all the rules of professional conduct and the applicable commentary, but those standards provide valuable guidance. “Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) (‘The Defense Function’), are guides to determining what is reasonable, but they are only guides.” Id. at 688, 104 S.Ct. 2052; see also Padilla v. Kentucky, - U.S. -, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (applying “weight of prevailing professional norms” to hold that criminal defense attorney provided ineffective assistance by failing to advise client that guilty plea would make client subject to automatic deportation; standards are “only guides,” not “inexorable commands,” but “may be valuable measures of the prevailing norms of effective representation”); Bobby v. Van Hook, 558 U.S. 4, 130 S.Ct. 13, 17, 175 L.Ed.2d 255 (2009) (faulting court of appeals for using ABA guidelines that post-dated the relevant conduct and treating them “not merely as evidence of what reasonably diligent attorneys would do, but as inexorable commands”).
Strickland specifically mentions the duty of loyalty, 466 U.S. at 688, 104 S.Ct. 2052, and as part of the “overarching duty to advocate the defendant’s cause,” the constitutional standard surely includes the *387 duty of confidentiality unless there is a powerful reason to make a disclosure of a confidence. In a case presenting a conflict between duties to a client and duties to a court, the Supreme Court relied heavily on the American Bar Association’s Model Rules of Professional Conduct, which had been widely adopted at that point, and the official commentary and scholarly writing on the problem, particularly where “virtually all of the sources speak with one voice.” Nix v. Whiteside, 475 U.S. 157, 166, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); accord, McClure v. Thompson, 323 F.3d 1233, 1241-43 (9th Cir.2003) (making this point while holding that lawyer did not breach constitutional or professional standards by giving police the locations of kidnapped children he feared were dying and needed rescue). In this case, virtually all sources speak with one voice with respect to two key failures by Williams’s original lawyer.
B. Clients With False Defenses
The problem the lawyer faced — a client who wants to concoct a false alibi or other defense — is not rare. The governing professional standards have been developed and applied for generations. Must the lawyer remain silent? May he disclose the client’s plan? Must he disclose it? May or must the lawyer withdraw? The boundaries between disclosures that are prohibited, permitted, or required have always been controversial and changing. See generally 2 Hazard & Hodes, The Law of Lawyering § 29.2 (3d ed. 2011) (“The situations treated in Rule 3.3 entail the most severe tension between duties to a client and duties to the tribunal.”).
As we’ll see, though, there is a clear professional consensus on two central points. First, before a lawyer discloses the client’s confidences, the lawyer has an obligation, where practicable, to try to convince the client to change course. If the persuasion is not successful and the lawyer seeks to withdraw, the lawyer may or may not have to disclose the reasons for doing so. If the lawyer decides or is required to disclose the client’s confidences, the second point of consensus is that the lawyer has an obligation to do so in a way that minimizes harm to the client. Lawyer Ryan failed to adhere to both of these standards and denied Williams the effective assistance of counsel.
The key provisions in the modern rules of professional conduct are Rule 1.6 on the duty of confidentiality and Rule 3.3 on the duty of candor to a tribunal. The history of those rules and their predecessors shows shifting standards on when a lawyer may or must disclose a client’s confidential information. Older standards of what is now Rule 1.6 permitted disclosure only to prevent reasonably certain death or substantial bodily harm. Exceptions were later added to prevent fraud that is reasonably certain to cause substantial financial injury, and, in perhaps the broadest formulation, to prevent “a crime.” That broadest formulation is the standard that applied in the Northern District of Illinois when Ryan was representing Williams. See Northern District of Illinois, Rules of Professional Conduct, Local Rule 83.51.6 (effective Sept. 1, 1999, including amendments through Apr. 1, 2006). Under the rules in effect in 2007, lawyer Ryan did not have a professional duty to remain silent when he realized that Williams was trying to use him as a conduit to help him concoct a false alibi. Williams’s effort fits the definition of a criminal attempt to obstruct justice. That’s a crime, and Rule 83.51.6 did not forbid disclosure if the lawyer reasonably believed it was necessary to pre *388 vent successful commission of the crime.[1]
But the definition of the crime is actually the last step in the analysis. The focus must first be on the issue of necessity. When a client insists on committing perjury, the lawyer faces a difficult problem. How should a lawyer weigh the duty to the client against the duty to the tribunal? Especially for a lawyer in a criminal case, there is no completely satisfactory answer to this difficult question, as Professors Hazard and Hodes explain in detail in their treatise. See generally 2 Hazard & Hodes, The Law of Lawyering §§ 29.15 to 29.21 (reviewing debates and evolution of professional standards for dealing with this dilemma). Because there is no perfect answer here, and because disclosure is permitted only when the lawyer reasonably believes it is necessary to prevent the crime or harm, the lawyer has a duty to the client to try to reconcile those conflicting duties to the client and the tribunal before making a disclosure.
That’s why agreement in the profession has been universal on the first key point: Before taking any further steps toward disclosure or any other imperfect solution, a lawyer who believes the client intends to commit perjury must, when possible, first confront the client and try to convince him to change course. “It is universally agreed that at a minimum the attorney’s first duty when confronted with a proposal for perjurious testimony is to attempt to dissuade the client from the unlawful course of conduct.” Nix v. Whiteside, 475 U.S. at 169, 106 S.Ct. 988 (holding that lawyer did not deny effective assistance by persuading client not to commit perjury); accord, Model Rules of Professional Conduct, Rule 1.6, comment ¶ 14 (2007) (“Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure”) (emphasis added); Restatement (Third) of Law Governing Lawyers § 120, comment g (2000) (“Before taking other steps, a lawyer ordinarily must confidentially remonstrate with the client or witness not to present false evidence or to correct false evidence already presented. Doing so protects against possibly harsher consequences. The form and content of such a remonstration is a matter of judgment. The lawyer must attempt to be persuasive while maintaining the client’s trust in the lawyer’s loyalty and diligence. If the client insists on offering false evidence, the lawyer must inform the client of the lawyer’s duty not to offer false evidence and, if it is offered, to take appropriate remedial action.”); 2 Hazard & Hodes, The Law of Lawyering § 29.21 (“There is universal agreement that the first step should be to urge the client to rectify the situation, and near-universal agreement that if that ap *389 proach fails the lawyer must withdraw if possible.”).
That is also the instruction of the rules that governed practice in the Northern District of Illinois when Ryan made his disclosure. The district’s version of Rule 1.6(b) in 2007 allowed disclosure in case of an intended crime, but the commentary described just what a lawyer should do upon learning that a client intends to commit a crime: “In any instance in which the lawyer learns of a client’s intention to commit a crime, where practical the lawyer should seek to persuade the client to take suitable action.” Local Rule 83.51.6, Committee Comment. And the comment to the Northern District’s adoption of Rule 3.3 specifically discussed the problem of planned perjury by the accused:
Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer’s duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw.... If withdrawal will not remedy the situation or is impossible, the advocate should make disclosure to the court. It is for the court then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing.
Local Rule 83.53.3, Committee Comment (emphases added). Note that this guidance assumes that a client’s attempt at perjury should not be reported to the court if persuasion works. That fits with Rule 83.51.6(b), which allows disclosure to the tribunal if “necessary,” meaning that lesser remedial measures either have not worked or will not work. Even if persuasion does not work and disclosure is made to the court, whether any further disclosure should be made (such as to the prosecutor) is a question for the court, not the defense lawyer.
My colleagues emphasize that Williams had completed the crime of attempting to suborn perjury. That is technically correct, but his attempt caused no harm. It is of course possible that Williams, having been thwarted by Ryan, would have tried again. The possibility that he might try again fits this case into the pattern of the client who proposes perjury and who may be persuaded not to follow through. Recall that the standard for a lawyer’s disclosure of client confidences is necessity. That’s true under every relevant version of Rules 1.6(b) and 3.3.(b). Disclosure here could not have been necessary unless and until Ryan tried and failed to persuade Williams to change course.
That leads to the second key point on which there is also universal agreement. Even if persuasion fails and the lawyer decides to make a disclosure to the court, the disclosure should be no greater than necessary to accomplish its purpose. This point follows from the standards of necessity and the conflict between the lawyer’s duties to both client and tribunal. The commentary to Rule 1.6 is clear:
In any case, a disclosure adverse to the client’s interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose.... If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
Model Rules of Professional Conduct, Rule 1.6, comment ¶ 14 (2007) (emphasis added). *390 The Northern District of Illinois adopted this comment in substance for Local Rule 83.51.6. Accord, e.g., Restatement (Third) § 120, comment h (in taking necessary remedial steps, lawyer must proceed so as to cause “minimal adverse effects” for the client).
The majority treats these points of universal agreement as mere “recommendations” that left lawyer Ryan with broad discretion to disregard them in making his disclosure. The majority also asserts that these standards do not reflect the constitutional standard of effective counsel under the Sixth Amendment. I respectfully disagree on both points. The Sixth Amendment standard is that of professional reasonableness. Where the standards of professional conduct, including explanatory comments, reflect such a clear and broad consensus as they do here, they provide a reliable guide to the Sixth Amendment and the advocacy that an accused has every right to expect from his lawyer. See Padilla, 130 S.Ct. at 1482 (relying on “weight of prevailing professional norms” in applying Sixth Amendment to lawyer’s advice on immigration consequences of guilty plea); Van Hook, 130 S.Ct. at 17 (relying on general standards in effect at time of trial); Whiteside, 475 U.S. at 167-70, 106 S.Ct. 988 (relying on model rules and commentary in applying Sixth Amendment); Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (Sixth Amendment “relies on the legal profession’s maintenance of standards sufficient to justify the law’s presumption that counsel will fulfill the role in the adversary process that the Amendment envisions”). This is not a case that requires fine parsing of the differences between the rules and the commentary.
The relevant professional standards are clear. If a lawyer is to disclose the client’s confidential affairs to prevent a crime or prevent other serious harm, the disclosure must be a matter of necessity. Disclosure must be the last resort, not the first response. Unless an emergency makes persuasion impractical, the lawyer first owes the client the opportunity to change his course based on the lawyer’s professional advice. And if the lawyer is unable to persuade the client to change course, the lawyer has a duty to warn the client that the lawyer will need to take remedial action, up to and including disclosing the circumstances to the court, and to withdraw from the representation if possible.[2]
At a minimum, then, in this case Ryan should have told Williams that he had read the letter, advised against perjury, warned Williams that he would disclose the information to the court if necessary, and asked Williams about his intentions. Only if he was not satisfied with Williams’s answer should he have asked the court for leave to withdraw. If he provided the court an explanation at all, it should have been filed under seal so the prosecutor would not see it. The duties of loyalty and confidence required at least this degree of effort to protect his client, even from his own criminal stupidity.
Ryan’s decision to go straight to the court and prosecutor, without talking with his client first, ran counter to all the sources on standards of professional conduct. In that respect, this case is similar to Nix v. Whiteside, where “virtually all of the sources speak with one voice.” 475 U.S. at 166, 106 S.Ct. 988 (finding no denial of effective assistance); accord, McClure v. Thompson, 323 F.3d 1233, 1241-42 (9th Cir.2003) (making this point while holding that lawyer did not breach constitutional *391 or professional standards by making anonymous call to police to give locations of kidnapped children he feared were dying and needed rescue). Contrary to professional standards, Ryan transformed himself from the defendant’s advocate into a prime witness against him. The lawyer’s breach of duties of confidentiality and loyalty was so clear and so basic as to fall below the constitutional standard for effective assistance of counsel. As best I can tell, the majority’s acceptance of this lawyer’s choice to skip the step of talking to his client, when that step was quite practical, is simply unprecedented.
We should not excuse this failure to consult with or warn the client — and certainly not based on speculation that doing so would have been futile. There was ample time to talk with the client. Ryan could not have known whether Williams would heed advice and a warning that he never gave. The requirement that lawyers attempt to dissuade their clients from illegal acts is based not on optimism about their chances of success, but on the understanding that disclosure must be the last resort for a loyal, confidential advocate whose duties include trying to save the client from his own folly. The Northern District’s committee comment to Local Rule 83.51.6 expressed this long-understood preference for lawyers to adopt the role of confidant before the role of informant: “[T]o the extent a lawyer is required or permitted to disclose a client’s purposes, the client will be inhibited from revealing facts which would enable the lawyer to counsel against a wrongful course of action. The public is better protected if full and open communication by the client is encouraged than if it is inhibited.”[3]
C. Use of the Lawyer’s Breaches at Trial
Ryan’s breach of his professional duties would not have caused actual harm to Williams if the prosecutor had not called Ryan as a witness at trial. I join my colleagues’ disapproval of the prosecutor’s decision to call Ryan to testify against his former client. Model Rule of Professional Conduct 3.8(e) (2007) says that a prosecutor shall
not subpoena a lawyer ... to present evidence about a past or present client unless the prosecutor reasonably believes:
(1) the information sought is not protected from disclosure by any applicable privilege;
(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
(3) there is no other feasible alternative to obtain the information....
That rule was not adopted by the Northern District of Illinois until ten months after this trial, but it still applied to federal prosecutors in Illinois. See Illinois Rules of Professional Conduct, 111. S.Ct. R. 3.8(e) (adopted Jan. 1, 2010); 28 U.S.C. § 530B(a) (“An attorney for the Government shall be subject to State laws and rules ... governing attorneys in each *392 State where such attorney engages in that attorney’s duties.”); see also United States v. Colorado Supreme Court, 189 F.3d 1281, 1288 (10th Cir.1999) (holding that Colorado rule equivalent to Rule 3.8(e) applied to federal prosecutors). Rule 3.8(e) embodies a very old norm against non-essential testimony from the opposing party’s lawyer. See, e.g., Berd v. Lovelace, 21 Eng. Rep. 33 (1577) (excusing solicitor from testifying about his client). The government asserts that calling Ryan was consistent with the rule because his testimony was “essential” to the case against Williams. More on that in a moment.
Trial counsel also had an opportunity to try to prevent Ryan’s breach of his professional duties of confidentiality and loyalty from harming Williams. Yet trial counsel did not register an objection to Ryan’s testimony in either trial. In light of the universal agreement on the lawyer’s duty to try first to persuade the client to change course and to warn of the lawyer’s duty to disclose, as well as the duty to minimize harm in the course of withdrawal and disclosure, the lack of objection here is a mystery to me. When a defense lawyer sees the client’s former defense lawyer on the government’s witness list, alarm bells should ring. There was no apparent tactical reason why the defense would have wanted Ryan to testify, and the prosecution could not point to controlling legal authority authorizing Ryan’s chosen course of immediate disclosure to the judge and the prosecution. In the absence of controlling legal authority allowing Ryan’s testimony, it should have been obvious that an objection was warranted. The failure to make one fell below professional standards of competency.
The majority asserts that Ryan’s testimony could not have violated Williams’s right to effective counsel because Williams was no longer his client at trial. I respectfully disagree. The breach of the lawyer’s duties of loyalty and confidentiality occurred while he was still representing Williams but seeking to withdraw. More important, though, both duties continue beyond the termination of the lawyer-client relationship. Rule 1.6 imposes no time limits on the duty of confidentiality, and paragraph 18 of the comment makes explicit that the duty of confidentiality continues after termination. Rule 1.9(c) states that a lawyer may not use information relating to representation of a former client to the disadvantage of that client except as the professional rules would permit or require.
The fact that the breaches did not finally cause harm to Williams until the trial does not excuse the original professional and constitutional breaches. To test the majority’s logic on this point, consider the extreme case of the defendant’s former lawyer, retired from practice and thus not subject to professional discipline, volunteering to testify for the prosecution about client confidences without even arguable justification for disclosure under Rules 1.6 or 3.3. The constitutional violation in such a case should be obvious. The majority also begs the question by suggesting that a retrial would do no good because the government could just subpoena Ryan again. Such a subpoena, seeking testimony based on client confidences breached in violation of both professional and constitutional standards, should be quashed.
The majority questions, though, whether the appropriate remedy for the lawyer’s breaches should have been to exclude his testimony. I agree that an exclusionary remedy should be a last resort rather than a first impulse, but recall that in my view, we are dealing here with a breach of the disclosure of client confidences that violated the lawyer’s professional duties and the accused’s constitutional rights. No other *393 remedy is apparent. Williams certainly could not sue Ryan for damages on the theory that he was wrongfully convicted as a result of Ryan’s breaches. See Lieberman v. Liberty Healthcare Corp., 408 Ill.App.3d 1102, 350 Ill.Dec. 593, 948 N.E.2d 1100, 1107-08 (2011) (collecting Illinois eases requiring that conviction be set aside before client can bring legal malpractice claim against criminal defense attorney). The Second Circuit has explained that district courts should have discretion to suppress evidence obtained in violation of ethical rules governing the prosecutor (by interrogating a counseled suspect without informing counsel). United States v. Hammad, 858 F.2d 834, 841—42 (2d Cir.1988). In Hammad, the court found that suppression was an error where the underlying ethical standard had not been clear (akin to a good faith exception), but also made clear that suppression would be appropriate to remedy clear constitutional violations and as a part of the court’s supervisory powers. Id.
The argument for suppression is at least as strong when evidence becomes available because of a defense lawyer’s breach of professional duties. A client who hires a lawyer to defend him on criminal charges is entitled to expect the lawyer to comply with both the standards of professional conduct and the Sixth Amendment. When a court appoints a lawyer to represent an indigent defendant, as happens in most cases, that client is entitled to no less. The idea that a client could be convicted based on information disclosed by a court-appointed attorney in violation of his professional and constitutional duties is, to me at least, appalling. It is comparable to using a coerced confession to convict.
The majority suggests that we should not exclude the lawyer’s evidence but should rely on discipline for professional misconduct to deter violations of professional standards. For three reasons, that is not a sufficient remedy. First, deterrence is not the sole rationale for exclusionary rules. We have here a violation of a constitutional right by an officer of the court. To protect the integrity of the courts’ own role, we should not be a party to using the direct fruits of that violation to convict and imprison the victim of the violation. Second, professional discipline would provide no remedy for the victim. To make this point clearly, let’s suppose the evidence against the defendant were a lot weaker than the actual evidence against Williams, so that we would all agree that the lawyer’s testimony affected the verdict. We still should not tolerate use of the lawyer’s testimony offered in violation of professional and constitutional duties. Finally, where exclusionary rules are well established, such as with Fourth or Fifth Amendment violations by police officers, the misconduct can subject the officers to civil or even criminal liability, which can also deter. Yet the evidence is still excluded, as it should be here.
“The duty of an attorney to keep his or her client’s confidences in all but a handful of carefully defined circumstances is so deeply ingrained in our legal system and so uniformly acknowledged as a critical component of the reasonable representation by counsel that departure from this rule ‘make[s] out a deprivation of the Sixth Amendment right to counsel.’ ” McClure, 323 F.3d at 1242-43, quoting Whiteside, 475 U.S. at 171, 106 S.Ct. 988. Williams has made that showing here.
II. Prejudice Under Strickland
The prejudice prong of Strickland requires a convicted defendant to show that, but for his lawyer’s unprofessional error, there is a reasonable probability that the outcome would have been different. 466 U.S. at 694, 104 S.Ct. 2052. The defendant need not show that an acquittal was *394 more likely than not, and the fact that evidence was sufficient to convict is certainly not controlling. See Stanley v. Bartley, 465 F.3d 810, 814 (7th Cir.2006). The strong evidence against Williams makes this a close question for me, but the great prejudice caused by his lawyer’s breach of loyalty and confidentiality and the prosecution’s emphasis on that evidence tip the scales for me in favor of finding prejudice and ordering a new and fairer trial.
The prosecution closed its case with flair, calling lawyer Ryan to tell the jury about Williams’s “rotten” scheme to procure false alibi testimony, and just before resting, reading the crude letter aloud to the jury. When Williams testified, the prosecutor finished his cross-examination in devastating fashion by walking Williams through the letter to his cousin line by line, forcing him to admit that each of fifteen statements in the letter was a lie. During closing arguments, the government again emphasized Williams’s attempt at a false alibi.
The circumstantial evidence against Williams was certainly strong. The fact that he was found in a car with some of the stolen money a few hours after one robbery was strong evidence that he was involved. He was also wearing shoes that were consistent with tracks left by one of the robbers and stained with a dye that matched a robber’s clothing, and he owned a gun like one used in the robberies. But the direct identification evidence was not ironclad. A cooperating accomplice identified Williams and Austin as the robbers after receiving very lenient treatment, and his testimony was vulnerable to credibility challenges. An admittedly angry ex-girlfriend identified Williams as the masked man from a video by only “his movement and the way he walk,” and a neutral witness saw only two people emerging from a getaway car that the prosecution’s star cooperating witness said should have held three.
The question for us is whether there is a reasonable probability that the erroneously admitted evidence affected the verdict. Given some of the weak spots in the government’s case, it’s not hard to imagine a skeptical juror, troubled by doubts, being swayed by another juror’s argument: “But if he didn’t do it, why would he try to fake an alibi?” And recall that the prosecution has advised us that Ryan’s testimony was “essential” to its case, as needed to satisfy Rule 3.8(e). My colleagues disagree with that assessment, but I would give more weight to the prosecution’s view of its own case and resolve the close question in favor of a new trial.
Defendant Williams presents one of those rare cases where ineffective assistance can be decided from the contents of the record on direct appeal. I would remand for a new trial of Williams, this time without any mention of lawyer Ryan or the letter as part of the prosecution’s case-in-chief.

. Since June 2011, the Northern District of Illinois has used the ABA Model Rules of Professional Conduct, which provide a narrower exception in Rule 1.6. See Northern District of Illinois, Rules of Professional Conduct, Local Rule 83.50 (adopted June 2, 2011). My colleagues’ criticism of that amendment as "less protective of public safety" is not warranted. As controversial as some of these issues may be, our colleagues in the Northern District could reasonably conclude that rules imposing stronger duties of loyalty and confidentiality are more likely in the long run to encourage clients to trust their lawyers and the lawyers' advice than rules that make it easier for criminal defense lawyers to become witnesses against their clients. That’s certainly the predominant view of authorities on professional responsibility. And the amended Northern District rule still allows a lawyer to disclose client confidences to protect lives and safety and to prevent or remedy substantial financial harm.

. Such a warning is consistent with Rule 1.6 and Rule 3.3. See Restatement (Third) § 120, comments g & h; 2 Hazard & Hodes, The Law of Lawyering § 29.21.

. I agree with my colleagues that Williams’s attempt to suborn perjury from his cousin was not a privileged attorney-client communication. It was not even a communication between attorney and client. The lawyer's duty of confidentiality is far broader, though. See, e.g., Stepak v. Addison, 20 F.3d 398, 406 (11th Cir.1994), citing Brennan’s Inc. v. Brennan’s Restaurants, Inc., 590 F.2d 168, 172 (5th Cir.1979); Model Rules of Professional Conduct, Rule 1.6(a) (2007). A lawyer is also bound by a broad duty of loyalty. Strickland, 466 U.S. at 688, 104 S.Ct. 2052. This duty of loyalty applies even when the client is considering or attempting a foolish and illegal course of action, and it surely includes a duty to try to convince the client to change course.