HAMILTON, Circuit Judge,
concurring.
I join the court’s opinion, which accurately applies the available precedents of our court and the Illinois courts to the questions before us. I write separately to make two observations: one on the handling of the Starks case in particular and another on the handling of wrongful conviction claims in general.
First, we have been told that two additional cases are pending in the Northern District of Illinois concerning the City of Waukegan’s liability insurance coverage for the wrongful conviction claims asserted by Bennie Starks. The other cases involve other insurers with policies covering different time periods going back more than twenty years. The cases have been stayed pending progress in Starks’ criminal case, but that case is now resolved and presumably the stays will soon be lifted. For the reasons explained in Judge Kanne’s opinion for the court, I am confident that the two insurers in this case are not required to defend or indemnify the city against these claims. As long as the city has kept liability insurance in place over the decades, though, it is highly likely that the city is entitled to a defense and indemnity from at least one insurer, perhaps from more than one.
I respect the district court’s broad discretion in managing related cases, but keeping separate these eases contesting insurance coverage for the very same underlying claims seems to be an invitation for duplicative litigation and inconsistent results. The city is in a position that is the mirror image of an interpleader plaintiff — rather than having money or property that it knows it should pay to someone in a group of competing claimants, the city knows that it should be paid by someone among the various insurers. The insurers should resolve the coverage issues among themselves. If and when the stayed cases come back to life, I hope the district judges will reconsider whether they should remain separate.
Second, at a more general level, I note the complexity and confusion of the related timing questions — questions including ripeness, statutes of limitations, and insurance coverage — that are necessarily raised by the claims brought by people like Starks who are wrongfully convicted and spend years in prison. Issues relating to timing usually focus on either the beginning of the criminal process or the end. Was the claim ripe and did the statute-of-limitations clock begin to run at the time of the wrongful conviction and related events? Or was the claim ripe and did the statute-of-limitations clock begin to run only when the wrongful conviction was set aside?
With either answer, there can be a devil in the details. If the focus is on the beginning of the process, do we focus on the date of wrongful conduct by law enforcement, the date of conviction, the date of affirmance on direct appeal, or other events? (Anyone who wants to see how tricky even the last two possibilities can be should study the extensive federal case law on when the one-year clock for filing a federal habeas corpus petition runs under 28 U.S.C. § 2244(d). See, e.g., Evans v. Chavis, 546 U.S. 189, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).) If the focus is on the exoneration end of the process, do we focus on the date that a conviction is first vacated, the date that a court issues its mandate, or, in case of a remand or writ of habeas corpus *1136 allowing a new trial, when the reopened proceedings are concluded in favor of the accused?
There is plenty of room for confusion and mutual inconsistency in the ways courts handle these different timing issues in these wrongful conviction cases, not to mention malleability of arguments and outcomes. In any particular case, current Illinois law allows capable counsel to make arguments to justify nearly any resolution that would benefit their client — whether the client is the wrongfully convicted plaintiff, the government, or the insurer. Only the Illinois courts can untangle these knots to provide justice, consistency, and predictability. For example, the city here suggested at oral argument that the statute of limitations might have run on Starks’ claims before he could even bring them. The convoluted theory seems to be that Starks was actually exonerated back in 2007 when the Illinois Appellate Court issued its mandate, but that his claims did not accrue until the criminal prosecution ended with the 2012 nolle prosequi. Under this theory, the 2012 nolle prosequi somehow retroactively started the statute-of-limitations clock running back in 2007, effectively barring Starks’ claims before they accrued and could be brought. The fact that such an argument could be made with a straight face is a symptom of a need for clarification of Illinois law on these timing issues.
The argument also highlights a related point — the challenge of figuring out the scope of an insurer’s duty to defend claims in which the plaintiffs and defendants in the underlying claims try to cope with the uncertainty. Even if the plaintiff in the underlying case brings a claim that is clearly not yet ripe or is clearly barred by the statute of limitations, an insurer may still have a duty to defend its insured against the claim. See Valley Forge Ins. Co. v. Swiderski Electronics, Inc., 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307, 315 (2006) (insurer is obligated to defend “even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy”).
The choice between imposing the duty to defend on the insurer at the time of the original prosecution and conviction and the insurer at the time of the later exoneration is a difficult one. In National Casualty Co. v. McFatridge, 604 F.3d 335 (7th Cir.2010), and American Safety Casualty Ins. Co. v. City of Waukegan, 678 F.3d 475 (7th Cir.2012), we held that the trigger date for a malicious prosecution claim under Illinois law was the day of exoneration. (This case shows that “exoneration” can be a rather slippery concept, but I will leave those nuances aside for now.) If the trigger date is the original conviction, then the insurer from that time faces a decades-long liability “tail.” If the trigger date is the day of final official exoneration, then insurability can become a serious problem because of the prospect of a “known loss.” The city seeking insurance may be able to see looming liability well in advance, and an insurer may be able to demand disclosures about pending eases. Suppose the City of Waukegan tried to buy liability insurance for the Starks case after the DNA tests that led to Starks’ exoneration, or even after the March 23, 2006 appellate opinion had been issued. See People v. Starks, 365 Ill.App.3d 592, 302 Ill.Dec. 769, 850 N.E.2d 206, 211 (2006). Under McFatridge and American Safety, insurers from earlier periods probably would be off the hook. But if there were full disclosure of relevant facts after the DNA test or the appellate opinion, then insurance for a case like the Starks case could be prohibitively expensive and essentially not available at all.
*1137 The insurers here have invited us to reconsider McFatridge and National Casualty. There are good reasons why we should not. Our opinions in those cases are consistent with the relevant Illinois precedent, and this is a question of state law. If the rule we adopted in those cases needs to be reconsidered, it should be done by the Illinois courts. If the Illinois courts do reconsider, I hope they will do so with an eye toward the full range of issues that can arise in these cases, including Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and Illinois’s embrace of that rule in Lieberman v. Liberty Healthcare Corp., 408 Ill.App.3d 1102, 350 Ill.Dec. 593, 948 N.E.2d 1100, 1107-08 (2011), as well as ripeness, statutes of limitations, and the insurance coverage issues.