# Illinois Official Reports

## Appellate Court

---

*In re Detention of Duke*, 2013 IL App (1st) 121722

---

| | |
|---|---|
| Appellate Court Caption | *In re* DETENTION OF TERRY DUKE (Terry Duke, Plaintiff-Appellant, v. Jacqueline Buck, Ph.D., and Kimberly Weitl, Psy.D., Defendants-Appellees (Erin Busse, M.A., L.P.C. and Liberty Healthcare Corporation, Defendants)). |
| District & No. | First District, Second Division<br>Docket No. 1-12-1722 |
| Filed | December 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a petition seeking plaintiff's involuntary commitment as a sexually violent person, his counterclaims alleging that defendants, including psychiatrists and counselors, were guilty of medical and professional malpractice in diagnosing and treating him as a sexual sadist were properly dismissed, since he failed to seek proper leave to file the counterclaims, defendants had no duty to plaintiff, and defendants were immune from liability as agents of the State of Illinois. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 02-CR-80003, 11-MR-00031, 11-MR-00038; the Hon. William G. Lacy, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | J. Nicolas Albukerk, of Albukerk & Associates, of Chicago, for appellant. |
|---|---|
| | John A. Ousk and Julie A. Murphy, both of Patton & Ryan, LLC, of Chicago, for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Terry Duke appeals from the dismissal of two counterclaim/cross-claims (counterclaims) he filed as part of proceedings relating to the Illinois Attorney General's petition to involuntarily commit plaintiff as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act. 725 ILCS 207/1 *et seq.* (West 2002) (Act). Plaintiff alleged that defendants Dr. Jacqueline Buck, Dr. Kimberly Weitl, licensed therapist Erin Busse, and Liberty Healthcare Corporation committed medical and professional malpractice by improperly diagnosing and treating plaintiff as a sexual sadist. Plaintiff sought damages for deprivation of comfort, companionship and affection, as well as lost gains and earnings resulting from his involuntary and unjust detainment due to the misdiagnosed and/or improperly validated disorders.

¶ 2    Dr. Weitl was not served with process and did not appear. The remaining defendants moved to dismiss the counterclaims on various grounds pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619 (West 2012). The circuit court granted the motions to dismiss, without prejudice. The court followed the rule announced in *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102 (2011), that the filing of such a claim in a commitment proceeding is precluded until a favorable termination in the underlying proceedings is reached. Plaintiff only appeals the dismissal of his counterclaims against Drs. Buck and Weitl, arguing that the circuit court improperly interpreted *Lieberman* in dismissing his malpractice claims and that *Lieberman* actually supports his right to bring malpractice claims in the underlying case. Plaintiff also argues that the circuit court erred in dismissing the counterclaim against Dr. Weitl because the court lacked jurisdiction. Dr. Buck filed an appearance with this court, filed an appellate brief, and presented oral argument. Dr. Weitl did not file an appearance or take any part in the proceedings before this court. For the following reasons, we affirm the judgment of the circuit court.

## I. BACKGROUND

Following numerous convictions for sexual offenses and a declaration that he was a habitual sex offender, plaintiff was imprisoned at the Dixon Correctional Center in July 1984 and was scheduled to be paroled on July 5, 2002. However, pursuant to section 10 of the Act, the Illinois Department of Corrections engaged Anthony T. Schaab, Ph.D., on April 11, 2002, to conduct a clinical evaluation of plaintiff to determine if plaintiff was a sexually violent person subject to commitment. Based upon the results of the evaluation, the Attorney General filed a petition to commit plaintiff as a sexually violent person on June 26, 2002.

Plaintiff was transferred to the Illinois Department of Human Services Sexually Violent Persons Treatment and Detention Center in Rushville, Illinois. On December 16, 2002, the circuit court found probable cause for plaintiff's detention pending a final adjudication of the petition for commitment. Plaintiff has filed several continuances and a trial has yet to be held on the Attorney General's petition. Plaintiff remains detained under the 2002 court order.

On February 9, 2009, the circuit court granted the Attorney General's request to appoint Dr. Buck to conduct an updated evaluation of plaintiff because of the delays in the proceedings and Dr. Schaab's retirement. Dr. Buck submitted a report in August 2009, the Attorney General was granted leave to amend her petition, and an amended petition was filed on October 27, 2010. The amended petition incorporated the evaluation by Dr. Buck and asserted that plaintiff suffered from three mental disorders that predispose him to engage in acts of sexual violence thereby requiring his confinement.

Plaintiff did not file an answer to the amended petition. Instead, on August 29, 2011, plaintiff filed his counterclaim against Dr. Buck sounding in medical malpractice. On October 5, 2011, plaintiff filed his second counterclaim, naming Dr. Weitl, Busse and Liberty Healthcare as defendants. Plaintiff claimed that Dr. Weitl committed professional malpractice in diagnosing and treating plaintiff for the disorder "Paraphilia Not Otherwise Specified Sexually Attracted to Non-consenting Women/Females ('paraphilia non-consent')." Plaintiff alleged that Dr. Weitl indicated this disorder is addressed in the Diagnostic and Statistical Manual of Mental Disorders IV TR (DSM), but the disorder does not exist in the DSM. This issue was not dealt with by the circuit court as Dr. Weitl was not served and did not file an appearance; however, the remaining parties were served, appeared, and filed motions to dismiss plaintiff's counterclaims.

In her motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), Dr. Buck argued that plaintiff did not file the counterclaims as part of his answer or with leave of the trial court as required by sections 2-608 and 2-609 of the Code of Civil Procedure. 735 ILCS 5/2-608, 2-609 (West 2012). Both motions to dismiss also included argument that under *Lieberman*, which applied the "*Heck* Rule" derived from the United States Supreme Court decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), dismissal was required. Defendants argued that the *Heck* Rule bars parallel litigation to avoid the possibility of a successful tort action that could imply the invalidity of a sentence or conviction, as in the resolution of a commitment petition.

The motions were fully briefed and the circuit court heard argument. The court concluded that the issue was not complex and *Lieberman* holds that a counterclaim in a commitment

proceeding is precluded until there is a favorable termination of the proceedings. Therefore, the circuit court dismissed the counterclaims, without prejudice. This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of a pleading, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011). A section 2-619 dismissal is reviewed *de novo*. *Id*. We may affirm the dismissal of a complaint on any ground that is apparent from the record. *Sherman v. Township High School District 214*, 404 Ill. App. 3d 1101, 1107 (2010).

¶ 12        Plaintiff argues on appeal that the circuit court misinterpreted the holding in *Lieberman*. He asserts that *Lieberman* actually supports advancing a malpractice claim within proceedings under the Act. Therefore, he concludes that the circuit court erred and the dismissal of his counterclaims must be reversed so that they may be heard in conjunction with the trial on the commitment petition. Plaintiff also contends that the court lacked jurisdiction when it dismissed the action against Dr. Weitl.

¶ 13        Plaintiff asserts that the circuit court misinterpreted the *Lieberman* decision and erred in applying it to the instant case. In *Lieberman*, the class action plaintiffs were adjudicated sexually violent persons and committed pursuant to the Act based on a doctor's testimony that the plaintiffs were diagnosed with paraphilia nonconsent. *Lieberman*, 408 Ill. App. 3d at 1104. As in this case, the plaintiffs claimed that the defendants committed medical malpractice by negligently diagnosing a disorder that did not exist in the DSM. *Id.* at 1106. The defendants' motion to dismiss the complaint was granted based on the doctrine of collateral estoppel. *Id.* at 1107-08.

¶ 14        On appeal, the *Lieberman* court applied the holding in *Heck* that, in order to recover damages, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck*, 512 U.S. at 486-87. The *Lieberman* court found that the *Heck* Rule applied to the plaintiffs as they were confined by virtue of the adjudications under the Act and their malpractice actions challenged the diagnoses underlying their confinement. *Lieberman*, 408 Ill. App. 3d at 1112. Because the plaintiffs were collaterally attacking their confinement by alleging medical malpractice without challenging the confinement, "[o]nly after the favorable termination of plaintiffs' confinements may they pursue their claim for money damages." *Id.* at 1112-13.

¶ 15        Plaintiff argues that the application of *Lieberman* to his case would violate his due process rights because he would not be able to bring his medical malpractice claim until after the statute of limitations had run on his claim. Plaintiff quotes *Lieberman* for the proposition that he "could have, and likely ***should have, raised that [medical malpractice] issue before the trial court***" (emphasis in original). See *id.* at 1109. Plaintiff claims that the *Lieberman* court recognized that the issues of confinement and malpractice should have been considered together so the jury could rule on all issues concerning the diagnosis in question. Therefore, he argued to the circuit court and argues on appeal that denial of his malpractice claims denies

- 4 -

him the opportunity to challenge his diagnosis. Plaintiff concludes that he should be allowed to raise his malpractice claims in the form of the instant counterclaims in the commitment petition.

¶ 16   Dr. Buck argues that the circuit court properly dismissed the counterclaims based on *Lieberman* and the *Heck* Rule. She also contends that the Act does not contain any provisions authorizing a counterclaim, which forecloses plaintiff from seeking damages under such a claim until the underlying commitment proceeding concludes. Furthermore, she maintains that plaintiff failed to comply with the rules of civil procedure and his untimely claim is a nullity.

¶ 17   As noted above, this court may affirm the dismissal of a cause of action based on any ground of record. This case is best resolved by reviewing plaintiff's counterclaims and the elements for a medical malpractice action and, although pertinent, we need not consider the applicability of *Lieberman* to this case. However, we note that plaintiff's reliance on the language of *Lieberman* and his modification of the court's language to support his claim that the underlying proceedings are the proper venue to bring a medical malpractice action are misguided. The *Lieberman* court simply stated, in *dicta*, that the proper time for a plaintiff facing a commitment petition under the Act to challenge his diagnosis is during the proceedings on the petition. There is no support for plaintiff's argument because the court in no way indicated that the plaintiff should file a counterclaim for damages sounding in tort at that juncture. *Lieberman*, 408 Ill. App. 3d at 1109.

¶ 18   In a medical malpractice action, the burden rests with the plaintiff to prove the following elements: "the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care." *Purtill v. Hess*, 111 Ill. 2d 229, 241-42 (1986). The question of the existence of a duty is a question of law that must be resolved by the court. *Doe v. McKay*, 183 Ill. 2d 272, 278 (1998). "If no duty exists, it is axiomatic that no recovery can occur." *Mt. Zion Bank State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995). Plaintiff cannot establish a duty owed by Dr. Buck and dismissal was proper on that ground alone. In addition, we note in this case that plaintiff cannot satisfy the elements of breach, proximate cause and injury caused by Dr. Buck's want of skill or care.

¶ 19   For the first element, plaintiff cannot show that Dr. Buck owed him a duty. The relationship between Dr. Buck and plaintiff is not a therapeutic relationship. Rather, Dr. Buck is a medical expert for the State, a forensic psychiatrist who interviewed plaintiff for purposes of the petition under the Act. During oral argument, it was elicited from plaintiff's counsel that Dr. Buck is not a treating doctor for plaintiff. Plaintiff also admits this in his notice of appeal, in which he states that he is appealing the dismissal of his counterclaim "against AG expert for medical malpractice." Without such a therapeutic relationship, Dr. Buck has no duty of care to plaintiff; she is an expert for the State without a duty to plaintiff and plaintiff's counterclaim was properly dismissed. *Johnston v. Weil*, 396 Ill. App. 3d 781, 787 (2009), *aff'd*, 241 Ill. 2d 169, 182 (2011).

¶ 20 Even if plaintiff could establish a duty owed to plaintiff by Dr. Buck, there remain numerous other issues with his counterclaims, including various immunities that support dismissal. In his brief on appeal, plaintiff asserts:

> "This cross claim is appropriate because the State of Illinois and the IDOC are named parties in an SVP commitment proceeding. Dr. Buck and Dr. Weitl are agents of the State and were commissioned and authorized to perform an accurate mental health evaluation of the Plaintiff, Mr. Duke. Dr. Buck was authorized as an agent of the IDOC and Dr. Weitl was authorized as an agent of the DHS, and both acted under the authority of the State.

> * * *

> Both Dr. Buck and Dr. Weitl have assumed an agency relationship with the State."

¶ 21 Pursuant to section 10(d) of the Act, "[a]ny agency or officer, employee or agent of an agency is immune from criminal or civil liability for any acts or omissions as the result of a good faith effort to comply with this Section." 725 ILCS 207/10(d) (West 2012). Additionally, state immunity and mandated reporter laws promulgated by the General Assembly provide similar immunities to agents of the State, including medical professionals, that determine if an individual presents an imminent danger to the public, children, or himself where there is reasonable cause to do so or the professional is not engaging in willful or wanton misconduct. See 745 ILCS 10/2-202 (West 2012); 325 ILCS 5/4 (West 2012); 405 ILCS 5/6-103, 6-103.1 (West 2012). Further, if the State or an agent of the State is the party in a tort action, as plaintiff maintains Dr. Buck is, the action must be brought in the Court of Claims. 705 ILCS 505/8(d) (West 2012).

¶ 22 We also note that plaintiff's claims center on Dr. Buck's diagnosis of paraphilia non-consent and that this diagnosis constitutes medical malpractice because it is not listed in the DSM-IV. However, this diagnosis has been before this court and our supreme court and, while acknowledged to be a controversial issue for over 20 years, it has been the basis of probable cause determinations under the Act in this state. See *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 53, *aff'd sub nom. In re Detention of Stanbridge*, 2012 IL 112337. Very recently, this division of the First District of the Appellate Court held "there is ample evidence to conclude that PNOS non-consent is generally accepted within the psychological community." *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶¶ 58-62 (citing *McGee v. Bartow*, 593 F.3d 556 (7th Cir. 2010)). Accordingly, plaintiff has not, and cannot, state a claim for medical malpractice and the counterclaim against Dr. Buck was properly dismissed.

¶ 23 Plaintiff also contends that the circuit court erred in dismissing his claims against Dr. Weitl. He claims that the court had no jurisdiction to act because Dr. Weitl was not properly served and did not appear, therefore the court lacked personal jurisdiction. Plaintiff asserts that a judgment entered without proper jurisdiction is void and may be attacked at any time. *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 309 (1986).

¶ 24 The procedure to follow when answering an amended pleading is not covered by the Illinois Code of Civil Procedure, but left to the discretion of the circuit court. *McGinnis v. A.R. Abrams, Inc.*, 141 Ill. App. 3d 417, 420 (1986). Plaintiff obviously violated the circuit court's requirement for granting leave in this situation. Furthermore, the counterclaim naming Dr.

Weitl, Busse, and Liberty Healthcare, brought in new parties to the case and leave was required under section 2-406 of the Code of Civil Procedure. 735 ILCS 5/2-406 (West 2012). Therefore, in addition to the reasons cited above, the trial court's dismissal of the counterclaim, whether or not it had jurisdiction over Dr. Weitl, was proper as leave was not granted and the pleading was a nullity.

¶ 25                                   III. CONCLUSION
¶ 26          For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 27          Affirmed.