2021 IL App (2d) 200602-U
No. 2-20-0602
Order filed September 2, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MIRAMAR CAPITAL, LLC and ROBERT KALMAN, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 19-L-801 |
| | ) | |
| WELLS FARGO CLEARING SERVICES, LLC d/b/a Wells Fargo Advisors and STEVEN HEFTER, | ) ) ) | |
| | ) | Honorable |
| | ) | Jorge L. Ortiz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in dismissing plaintiffs' defamation claims as subject to mandatory arbitration under the rules of the Financial Industry Regulatory Authority (FINRA). When the allegations of the complaint are read in the light most favorable to plaintiffs, the preconditions for mandatory FINRA arbitration were not met.

¶ 2   Plaintiffs, Miramar Capital, LLC (Miramar) and Robert Kalman, appeal from the dismissal,

pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018))

of their amended complaint against defendants, Wells Fargo Clearing Services, LLC d/b/a Wells

Fargo Advisors (Wells Fargo) and Steven Hefter. The trial court ruled that plaintiffs were obligated to submit the dispute to arbitration under the rules of the Financial Industry Regulatory Authority (FINRA), a self-regulatory organization for the securities industry. We reverse and remand for further proceedings.

¶ 3                                      I. BACKGROUND

¶ 4      In their amended complaint, plaintiffs alleged that Kalman was an experienced investment advisor and portfolio manager employed by Miramar. In 2018, Hefter, acting as an agent of Wells Fargo, "contacted a number of Plaintiffs' clients, and falsely informed them of alleged professional wrongdoing on the part of Kalman, in a specious attempt to steal Plaintiffs' clients." Plaintiffs alleged one specific instance, *i.e.*, on November 15, 2018, Hefter contacted one of plaintiffs' clients, Rivka Zell, to obtain her business. Plaintiffs alleged that when Hefter learned that plaintiffs were working with Zell, "Hefter sought to lure Ms. Zell's business away from Plaintiffs' [*sic*] by publishing false statements regarding Kalman and his business reputation, in an attempt to persuade Ms. Zell that Plaintiffs were somehow untrustworthy or dishonest." Statements to Zell and other clients included false accusations that Kalman had defrauded investors in the past and that the fraud appeared on Kalman's record as an investment advisor. Plaintiffs sought recovery under theories of defamation *per se*, false light invasion of privacy, and violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILC 505/1 *et seq.* (West 2018)).

¶ 5      Defendants filed a motion under section 2-619 of the Code to dismiss the suit because, under FINRA rules, plaintiffs were obligated to submit the dispute to arbitration. FINRA Rule 13200(a) provides, in pertinent part:

"Except as otherwise provided \*\*\*, a dispute must be arbitrated \*\*\* if the dispute arises out of the business activities of a member or an associated person and is between or among:

- Members;

- Members and Associated Persons; or

- Associated Persons." FINRA R. 13200, (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13200) (last visited Aug. 24, 2021) [https://perma.cc/FW4M-BY4C].

FINRA Rule 13100(q) provides that "member" means "any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated, suspended, cancelled, revoked, the member has been expelled or barred from FINRA or the member is otherwise defunct." FINRA R. 13100(q), (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100) (last visited Aug. 24, 2021) [https://perma.cc/49QQ-M8BW]. FINRA Rule 13100(b) states that "associated person" means "a person associated with a member, as that term is defined in [FINRA Rule 13100(u)]." FINRA R. 13100(b), (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100) (last visited Aug. 24, 2021) [https://perma.cc/49QQ-M8BW]. FINRA Rule 13100(u)(1) provides that "person associated with a member" means, *inter alia*, "[a] natural person who is registered or has applied for registration under the Rules of FINRA." FINRA R. 13100(u)(1), (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100) (last visited Aug. 24, 2021) [https://perma.cc/49QQ-M8BW]. Significantly, Rule 13100(u) further provides that, for purposes of arbitration, "a person formerly associated with a member is a person associated with a member." FINRA R. 13100(u), (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100) (last visited Aug. 24, 2021) [https://perma.cc/49QQ-M8BW].

¶ 6 Defendants asserted that the obligation to arbitrate was an affirmative matter defeating plaintiffs' claims. Defendants contended that they were members of FINRA. They also included online registration records from FINRA showing that Kalman had been registered with FINRA through various securities or investment firms nearly continuously from June 1988 to April 2018. Defendants argued that, under agency principles, if Kalman fell under FINRA rules, then so would Miramar.

¶ 7 In response to the motion, plaintiffs stated that, after April 2018, Kalman neither was a member of FINRA nor applied to become one. Thus, according to plaintiffs, when Kalman made the alleged remarks to Zell in November 2018, he was neither a member of FINRA nor an "associated person." Plaintiffs also asserted that Miramar was never a member of FINRA.

¶ 8 The trial court granted defendants' motion to dismiss. The court found that, in November 2018, Kalman was an "associated person" under FINRA rules and, thus, plaintiffs' claim was subject to arbitration. Plaintiffs moved for reconsideration, reasserting that, when the alleged wrongful conduct occurred, they were not members of FINRA nor was Kalman an "associated person." The trial court granted the motion and vacated the order of dismissal. Defendants then moved to reconsider the order granting plaintiffs' motion to reconsider. The trial court granted that motion. The court found that its prior dismissal order was correct and that Kalman was, at the relevant time, an "associated person" under FINRA rules. The court again dismissed the case, and this appeal followed.

¶ 9 II. ANALYSIS

¶ 10 A section 2-619 motion to dismiss admits the legal sufficiency of a complaint but asserts affirmative matters that avoid or defeat the complaint's allegations. *Corcoran-Hakala v. Dowd*, 362 Ill. App. 3d 523, 525 (2005). "A section 2-619 motion affords litigants a means of disposing

of issues of law and easily proved issues of fact at the outset of a case." *Id.* Affirmative matter must be supported by affidavit, unless apparent on the face of the pleading attacked. 735 ILCS 5/2-619(a) (West 2018). In ruling on a section 2-619 motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). We review *de novo* a dismissal under section 2-619. *Goral v. Dart*, 2020 IL 125085, ¶ 27.

¶ 11    In its rulings below, the trial court focused on Kalman and made no findings about Miramar's status under FINRA rules. We hold, for the reasons to follow, that the trial court erred in holding that Kalman was subject to FINRA rules. As for Miramar, defendants make no independent argument about its status; they contend, rather, that Miramar would be subject to FINRA rules if Kalman was subject to them. Therefore, given our holding that Kalman was *not* subject to FINRA rules, we need not separately address Miramar's status under the rules.

¶ 12    Plaintiffs argue that, when the allegations of the complaint are viewed in the light most favorable to them, the dispute arose after Kalman ceased to be a member of FINRA in April 2018. Plaintiffs observe that, beyond general allegations that Hefter made defamatory statements at unspecified points in 2018, the amended complaint identified only one specific statement, which was made in November 2018. Thus, plaintiffs maintain that, when the allegations are viewed in the light most favorable to them, none of the wrongful conduct occurred during the portion of the year when Kalman was a member of FINRA. We note that, in a section 2-619 motion, the defendant bears the burden of proof that the affirmative matter defeating the claim exists. *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 14. Here, to the extent that arbitrability depends on the allegedly wrongful conduct having occurred during a particular time frame, it was

defendants' burden to prove that the conduct took place during that time frame, and they did not meet their burden.

¶ 13    However, defendants insist that, for purposes of arbitration, Kalman continued after April 2018 to be an "associated person," *i.e.*, "a person associated with a member," *i.e.*, "[a] natural person who is registered or has applied for registration under the Rules of FINRA."  FINRA R. 13100(u)(1),   (https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100)   (last   visited Aug. 24, 2021) [https://perma.cc/49QQ-M8BW].  If so, the dispute would be arbitrable regardless of when in 2018 the conduct occurred.  As noted, FINRA's online registration records establish that Kalman was registered with FINRA through several investment or securities firms nearly continuously from June 1988 to April 2018 and was therefore an "associated person."  Defendants argue that, under Rule 13100(u), he continued to be, after April 2018, an "associated person" for purposes of Rule 13200's arbitration requirements.  Under defendant's theory, because Kalman is "a person formerly associated with a member," he is still considered "a person associated with a member" for purposes of Rule 13200(a)'s arbitration requirement.  Accord, *Lorbietzki v. Merrill Lynch, Pierce, Fenner, and Smith Inc*, No. 2:11-cv-01585-RLH-PAL, 2011 WL 855354 (D. Nev. 2011), slip. op. at 3 (former employee who brought suit against former employer was an "associated person" despite argument that he "was no longer an associated person connected to the securities business when he suffered damages."); *Johnson v. Charles Schwab & Co.*, No. 09-CV-81479, 2010 WL 678126 (S.D. Fla. 2010), slip op. at 3 (plaintiff's argument that he was no longer an "associated person" because he was no longer a registered broker "is sensible, [but] it fails in the face of [the rule's] clear language" that " 'a person formerly associated with a member is a person associated with a member.' ").  The thrust of these cases is that "once an associated person, always an associated person." *Id.*

¶ 14　　In contrast, plaintiffs rely on *Metropolitan Life Insurance Co. v. Bucsek*, 919 F. 3d 184 (2d Cir. 2019).  In that case, the court held that an insurance company that had formerly been a member of the National Association of Securities Dealers (NASD), FINRA's predecessor organization, was not required to arbitrate claims that arose years after it was no longer a member.  The *Bucsek* court rejected the argument that for purposes of arbitration, the insurance company was a member, notwithstanding the termination or cancellation of its membership.  To accept that argument, the court noted, "would mean that all persons or entities that were ever subject to FINRA's arbitration Code would forever remain subject to it with regard to future disputes between them, even if the dispute concerned events that occurred years, decades, or even centuries after either of the parties to the dispute had ceased to have any connection with FINRA." *Id.* at 192. The court cited prior cases that had "concluded that [Rule 13100(q)'s] continuation of 'member[ship]' following termination or cancellation means *** that if the material events that gave rise to a dispute occurred while a party was a functioning member, that party is bound by the [FINRA Code] for the purposes of that dispute, even if it has subsequently canceled its membership or been expelled." *Id.* at 193; see also *Metropolitan Life Insurance Company v. Puzzo*, No. 1:13-CV-3858-TWT, 2014 WL 1817636 (N.D. Ga. 2014), slip op. at 2 ("a broker or dealer is a FINRA 'member' if it has been admitted to membership in FINRA, and it may be subject to FINRA arbitration requirement as long as its membership has not been terminated or cancelled prior to the material events giving rise to the dispute.").

¶ 15　　We find *Bucsek* and *Puzzo* more persuasive than *Lobietski* and *Johnson*.  Moreover, although *Bucsek* involved a member of FINRA, the reasoning applies to cases involving "associated persons." An individual who is an "associated person" by virtue of registration under FINRA's rules would not reasonably expect to be required to arbitrate disputes that arise from

events taking place after the individual's registration has terminated. Thus, we hold that a person formerly associated with a member must arbitrate a dispute if the material events giving rise to the dispute occurred while that person was actively associated with a member. Because defendants did not meet their burden of proving that the material events occurred while Kalman was actively associated with a member, the motion to dismiss should have been denied.

¶ 16                                             III. CONCLUSION

¶ 17    For the reasons stated, we reverse the judgment of the circuit court of Lake County and remand for further proceedings.

¶ 18    Reversed and remanded.